UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                      No. 14-cr-20484

vs.                                      Hon. Gerald E. Rosen

GINO LITTLES,

                Defendant.

_____/

OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
JUDGMENT NOTWITHSTANDING THE VERDICT OR NEW TRIAL

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on May 18, 2016

PRESENT:  Honorable Gerald E. Rosen
                  United States District Judge

## I. INTRODUCTION

Gino Littles was charged in a five-count superseding indictment with two counts of carjacking, two counts of using and carrying a firearm during a crime of violence, and one count of felon-in-possession of a firearm.  After an eight-day trial and two days of deliberation, on October 5, 2015, the jury returned a verdict of guilty on all counts.

On November 12, 2015, Littles, through counsel, filed the instant "Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for a New Trial," pursuant

1

to Fed. R. Crim. P. 29 and 33.[1]  The Government has responded to the Motion.

Having reviewed and considered Defendant's Motion and the Government's response thereto, and having further reviewed the record of this matter, the Court is prepared to issue its ruling.  This Opinion and Order sets forth the Court's decision.

## II.  FACTUAL BACKGROUND

On March 18, 2014, Defendant Gino Littles and co-defendant Sherod Houston robbed two individuals outside of the Starlight Liquor Store at McNichols and Telegraph Road in the City of Detroit.  They drove to the Spotlight Liquor Store in a stolen vehicle. They parked the stolen vehicle in an unlit area on the side of the store lying in wait for someone to exit. A short while later, a man and a woman exited the store.  Using Houston's brother's gun, they robbed the victims and took from them their car keys, some money, the woman's purse, and an expensive pair of Cartier sunglasses.

The next day, March 19, 2014, Defendant Littles decided to return to the Spotlight Liquor Store with co-defendant Vercell Coney and rob someone else.  Coney, in anticipation of committing armed robberies with Defendant, purchased a firearm.  Littles picked Coney up in a stolen Chevrolet Camaro. The Camaro, however, was loud and wreaked of gasoline so they parked the car and stole a white minivan that was parked on

---

[1]  Although Defendant titled his motion using the now defunct denomination "motion for judgment notwithstanding the verdict," inasmuch as Defendant brings the motion pursuant to Fed. R. Crim. P. 29, and seeks a "directed verdict of acquittal," the Court construes the motion as one for judgment of acquittal and will refer to it as such in this Opinion and Order.

a residential street in Dearborn.  They drove the white minivan to the Spotlight Liquor

Store where they committed an armed robbery with Coney's new gun. Defendant Littles

held the victim at gun point with Coney's gun while Coney robbed the victim.

After the armed robbery, Littles and Coney drove along Telegraph Road and

pulled into a Marathon gas station where two young men were fueling their cars at the

gas pumps.  Littles and Coney exited the minivan.  Littles walked up to the men and

pointed Coney's gun at them. Coney than searched them for anything of value.  Finding

nothing of value on the victims, they decided to steal the victims' cars, a Jeep and a

Chevy Impala.

Littles jumped into the carjacked Jeep and Coney got into the Impala.  Following

one another, the two co-defendants drove the cars to the Victory Inn in Dearborn. They

left the Jeep in the parking lot and drove the Impala to Southfield.  In Southfield, they

abandoned the carjacked Impala and Littles broke into and stole a Dodge Neon. The two

men then left Southfield in the Neon and drove back toward Dearborn.  After several

attempts calling Sherod Houston, they finally reached Houston and directed him to pick

them up at the Red Roof Inn in Dearborn.  Houston picked them up in Littles' car.

They drove to the apartment complex where Houston and Littles lived.  Littles and

Coney told Houston about the crimes they committed that night. Upon hearing that they

had carjacked the Jeep, Houston wanted in on the action.

The next morning, Houston agreed to drive the carjacked Jeep from the Victory

Inn back to their apartment complex. Once the Jeep was secured in the apartment

complex parking lot, the three defendants turned their attention to finding a buyer for the

Jeep. Later that day, Littles found a buyer who agreed to pay $2,500 for the Jeep.

Houston agreed to drive the Jeep to the buyer for $200.  Coney contacted his girlfriend,

Rachel Hyman, and convinced her to drive them in her car to follow behind the Jeep

Houston was driving to the buyer.

Meanwhile, the Detroit Police had the Jeep under surveillance. When the Jeep left

the apartment complex, the police followed Houston (who was driving the Jeep) and

Hyman (with Littles and Coney inside her Honda) to the freeway. Once on the freeway,

the Detroit Police had the Michigan State Police conduct a traffic stop on both vehicles.

Hyman immediately pulled the Honda to the side of the freeway. When Hyman, Littles

and Coney were removed from the Honda, the officers found Coney's firearm which he

had brought for protection.  Littles, Coney, and Hyman were arrested.  Houston, in the

Jeep, was thereafter also arrested after leading the police on a dangerous high-speed

chase.

Littles, Coney and Houston were subsequently charged in an indictment.  Littles

and Coney were charged with two counts of carjacking and two counts of using a firearm

during and in relation to a crime of violence.  Houston was charged as an accessory-after-

4

the-fact.[2]  Coney and Houston pled guilty pursuant to Rule 11 Plea Agreements, and

pursuant to Cooperation Agreements, agreed to and did testify against Littles at trial.

Littles was convicted on all counts.  He now moves for a judgment of acquittal or

new trial.

## III.  DISCUSSION

### A.   DEFENDANT'S MOTION IS UNTIMELY

Fed. R. Crim. P. 29(c) governs motions for judgment of acquittal following a jury

verdict.  Rule 29(c)(1) states that "[a] defendant may move for a judgment of acquittal, or

renew such a motion, within 14 days after a guilty verdict or after the court discharges

the jury, whichever is later."  Fed. R. Crim. P. 33 provides that, on motion of a

defendant, the Court may grant a new trial "if the interest of justice so requires."  Rule

33(b)(2) states that "[a]ny motion for a new trial grounded on any reason other than

newly discovered evidence must be filed within 14 days after the verdict or finding of

guilty."

The time limitations set forth in both Rule 29(c) and Rule 33(b) (2) have been

strictly construed. *United States v. Emuegbunam*, 268 F.3d 377, 397 (6th Cir. 2001); *see*

*also United States v. Sheppard*, 149 F.3d 458, 462 (6th Cir.1998) (citing *Carlisle v.*

*United States*, 517 U.S. 416, 418, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996)) (noting that

---

[2] A superseding indictment against Littles was subsequently issued which added a felon-in-possession charge against him.

5

Rule 29(c)'s time limitation has been strictly enforced). Failure to comply with the time limits set forth in Rule 29(c) and 33(b)(2) "deprives the district court of jurisdiction to even consider the motion." *United States v. Hough*, 276 F.3d 884, 899 (6th Cir.2002) (citing *United States v. Koehler*, 24 F.3d 867, 869 (6th Cir.1994)); *see also United States v. Brown*, 154 F. Supp. 2d 1055, 1058 (E.D. Mich. 2001) (noting that the Sixth Circuit has held that the time period for filing a new trial motion set forth in Rule 33 is "a jurisdictional limit on the district court's power to act.")  Further, "[u]ntimely 'renewed' or 'supplemental' motions do not relate back to timely filed motions." *United States v. Henning*, 198 F.3d 247, 1999 WL 1073669, at *2 (6th Cir. Nov.16, 1999); *see also Sheppard*, 149 F.3d at 463 (holding that district court lacked jurisdiction over untimely filed Rule 29 motion, even though defendant had filed an initial unsuccessful Rule 29 motion at close of proofs). As the *Henning* court noted, "allowing motions after the time limit would undermine the reasons for these limits, such as avoiding the uncertainty and confusion that would result from delayed decisions." 1999 WL 1073669, at *2.

In this case, the jury returned its verdict on October 5, 2015.  Pursuant to Rules 29(c) and 33(b)(2), Defendant Littles had until October 19, 2015 to file his motion. However, Defendant did not file his motion until November 12, 2015, some six weeks after the jury returned its verdict.  His motion, is, therefore, untimely.[3]

---

[3] Rule 45(b) allows a court on it own, or for good cause, on a party's motion, to extend the time for filing the motion "if the party failed to [timely] act because of excusable neglect."  Fed. R. Crim. P. 45(b)(1)(b).  *See also United States v. Muñoz*, 605

B.   <u>EVEN ON THE MERITS, DEFENDANT'S MOTION FAILS</u>

Even if Littles' motion were deemed timely filed, the Court would nonetheless

deny the motion on the merits.

Defendant's motion for a judgment of acquittal and his alternative motion for a

new trial are predicated upon two alleged "fundamental defects" in the trial: (1) that the

Government "intentionally injected other bad acts evidence into the trial despite the

Government's failure to give notice of its intent to offer such evidence," and (2) that the

Government "denied Defendant a fair trial by suggesting that the Defendant should have

produced evidence to prove his innocence."  Defendant also argues that the verdict was

against the great weight of the evidence.

<u>INADMISSIBLE "BAD ACTS" EVIDENCE</u>

Defendant Littles' claim that the Government inappropriately injected other bad

acts evidence into the trial is predicated upon the Government's examination of co-

defendant Sherod Houston.  Houston testified that he committed an armed robbery with

Defendant Littles at the Spotlight Liquor Store in Detroit.  *See* 9/22/15 Tr. pp. 276-286.

During the robbery, Houston and Littles robbed an individual of his Cartier glasses.  *Id.*

---

F.3d 359, 367-68 (6th Cir. 2010), *cert. denied*, 563 U.S. 929 (2011) (citing Advisory
Comm. Notes to 2005 Amendments of Rule 33 ("[U]nder Rule 45(b)(1)(B), if for some
reason the defendant fails to file the underlying motion for new trial within the specified
time, the court may nonetheless consider that untimely underlying motion if the court
determines that the failure to file it on time was the result of excusable neglect.")).  No
extension of time was ever requested by Defendant Littles, and no showing of good
cause or excusable neglect has been made.

at 283.[4] However, after Houston testified about the armed robbery, the Government

continued with its examination:

> Q: Is that the only robbery that you did that night with the defendant?
>
> A: No.
>
> Q: You did one other?
>
> A: Yes.

[9/22/15 Tr. p. 284.]

Defendant immediately moved for a mistrial, which the Court denied.  However,

the Court gave a curative instruction, instructing the jury to "disregard counsel's question

concerning what happened after the incident at the Spotlight Liquor Store with the

Cartier glasses.  Put it out of your mind[s] entirely." *Id.* at p. 286.  When the

Government resumed questioning Houston, the Government instructed him to "go to a

new date now...." *Id*.  Thereafter, the Government did not return to that line of

questioning.

Defendant argues nonetheless that the jury heard the testimony, and because the

jurors deliberated for several days, the testimony must have affected their verdict. Not

surprisingly, Littles cites no law for this proposition. Having been instructed to disregard

the testimony, the Court must presume that the jury followed that instruction.  *See Steele*

---

[4] The Court had previously ruled that this testimony was admissible.  *See* 9/16/15 Tr. pp. 4-6.

*v. Taylor*, 684 F.2d 1193, 1205 (6th Cir.1982), *cert. denied*, 460 U.S. 1053, 103 S.Ct. 1501(1982); *United States v. Forrest*, 17 F.3d 916, 920-21 (6th Cir. 1994). "Only when the evidence was so prejudicial that the jury could not be trusted to disregard it, should a new trial be granted." *United States v. Walker*, 506 F. App'x 482, 487 (6th Cir. 2012).

Here, however, the short exchange between the AUSA and Sherod Houston "was negligible, likely lasting less than a minute, with [Houston] saying merely two words." *United States v. Roberts*, 603 F. App'x 426, 439 (6th Cir. 2015). "Such a limited exchange could not taint Defendant's entire trial." *Id.* Therefore, the Court finds that neither a judgment of acquittal nor a new trial on this ground is warranted.

SHIFTING THE BURDEN OF PROOF

Defendant also argues that the Government denied him a fair trial because in questioning a defense witness and in speaking directly to the jury in rebuttal argument the prosecutor twice attempted to shift the burden of proof onto Littles to prove his innocence.

Defendant first points to the Government's cross-examination of defense witness, Julianne Cuneo, a private investigator who testified about her analysis of cell phone records provided in discovery.

During trial, much was made of cell phones -- who had what phone, who the phones belonged to, and where the phones were during the time frame relevant to the carjackings. Defendant's purpose in offering the testimony of Ms. Cuneo was to

establish reasonable doubt by the absence of evidence of phone calls made or received on Defendant Littles' phone the night of March 19, 2014.

Ms. Cuneo testified that she examined the phone records for three phone numbers known to be associated with co-defendant Vercell Coney and Defendant Littles and/or his girlfriend, Tiara Jackson, to see if there were any times on the night of the carjackings that those numbers were talking to one another or were talking to two other phone numbers associated with Jessica Antwine, co-defendant Sherod Houston's girlfriend, with whom Defendant Littles' girlfriend lived.  9/28/15 Tr. pp. 149-50.  She testified she was unable to find Jessica Antwine's numbers having made calls to or having received calls from any of the other three phones.  *Id.*

On cross-examination, the Government asked Ms. Cuneo whether she had tried to subpoena any records from the phone companies, since the defense has the right to use subpoenas, to which Cuneo answered, "no." *Id.* at 191.  Defendant did not object to this line of questioning by the Government at trial.  Nonetheless, Defendant now contends that through the questions posed to Ms. Cuneo, the Government impermissibly interjected testimony about the defendant's failure to present evidence to prove his own innocence.

Defendant further argues that the Government repeated this theme about the Defendant's failure to present evidence to prove his innocence in statements made by the prosecutor in his rebuttal to Defendant's closing argument.

10

In his closing argument, defense counsel told the jury:

> Gino Littles' parole officer gave his 9780 [cell phone] number to the Government but they did not get cell phone records or cell tower analysis done [on this number]. You can find reasonable doubt based on evidence or the lack of evidence.

> Wouldn't you like to know if cell tower information showed Gino Littles' phone was not in that vehicle? I wish I had [it] to give it to you. We don't have it. The Government has not presented it.

> It's their burden to prove their case beyond a reasonable doubt, to close all doors if they expect you to find this is proof beyond a reasonable doubt. They haven't closed that door.

[9/29/15 Tr. p. 62.]

In response to this argument, the Government stated in its rebuttal argument:

> [Defense counsel] talks about we don't have the defendant's phone records. But you heard the testimony. Both parties have subpoena powers.

> Mr. Mulkoff is an excellent lawyer. He had the ability to subpoena the records just like the Government did. And [] you heard what he said[.] [H]e said ["]wouldn't you have liked the Government to present that?["]

> The Government[,] as Agent Zambeck [testified,] requested the records as soon as we found out about that number and the testimony was it wasn't provided yet. You heard the Judge question the witness about it, question Agent Zambeck. Nobody's hiding anything from you.

> We found out about it, we requested it, we didn't get it.

> You know who's sitting at that table right there? The defense counsel has the same subpoena powers I do.

*Id.* at pp. 65-66.

Defense counsel objected and the Court sustained the objection. *Id.* at 66. The

Court then instructed the jury:

> Remember, ladies and gentlemen, my instruction:
>
> The Government has the burden of proof from the very beginning of the case right to the very end of the case. The defendant has no burden to prove anything to you.

*Id.*

The Court further granted Defense counsel's request that the Court instruct to jury to disregard the comments about him having failed to present evidence:

> I'm going to instruct the jury to disregard that. In truth, the defendant has no obligation to present evidence at all. They can, they might, if they wish.

*Id.*

Then, in giving its final instructions to the jury, the Court reiterated that "the defendant has no obligation to present any evidence at all or to prove to you in any way that he is innocent," and reminded them that their decision must be based only on the evidence they saw or heard in court and that "[t]he lawyers' statements and arguments are not evidence." [*See* Dkt. #74, Jury Instructions Nos. 3 and 4; 9/29/15 Tr.]

Nonetheless, Defendant now argues that the AUSA's references as to what the defense failed to do suggested to the jury that Mr. Littles had an obligation to present evidence and the Court's sustaining counsel's objection and admonishing the jury to disregard the remarks did not cure the problem. Therefore, Defendant contends that these alleged errors denied him a fair trial. Again, Defendant cites no authority for this

12

proposition.

This is not surprising as Sixth Circuit law does not support Defendant's position. When a defendant "implie[s] at closing that the government failed to [present certain evidence] because the evidence would be favorable to the defendant," the prosecutor may properly comment that the "defense [too] could have [presented that evidence] if desired." *United States v. Newton*, 389 F.3d 631, 638 (6th Cir.2004), *vacated on other grounds*, 546 U.S. 803 (2005); *see also United States v. Henry*, 545 F.3d 367, 381 (6th Cir.2008) ("[I]f the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction."). Several Sixth Circuit decisions are instructive on this point.

In *United States v. Wimbley*, 553 F.3d 455 (6th Cir.), *cert. denied*, 556 U.S. 1250 (2009), defense counsel stated in his closing argument that the police should have conducted DNA or fingerprint testing on the bags of crack cocaine purchased by the defendant, and that their failure to do so was a fatal flaw in the government's proof. In rebuttal, the prosecutor addressed defense counsel's assertion as follows:

> [T]o suggest that the Government didn't do enough to bring the proof to bear by virtue of not doing fingerprint analysis or DNA analysis, you heard the officers testify that it wouldn't have done any good. What you didn't hear is that the Defendant didn't try to do it or have it done. The Defendant has the ability to have these things tested, too, for fingerprints and DNA. If it was such a big deal to him, why didn't he have it tested, if he thought it would help him?

553 F.3d at 459. Defense counsel did not object to the prosecutor's rebuttal argument. *Id.*

13

The district court then proceeded to charge the jury, cautioning repeatedly that the government had the sole burden of proof, that Wimbley was presumed innocent, that he was on trial only for the three crimes charged, and that Wimbley had an absolute right not to testify or present any evidence. Neither party objected to the charge as given. After the jury began deliberations, however, defense counsel moved for a mistrial stating:

> [M]y objection would be on counsel's argument to the jury that we didn't provide any fingerprint analysis or DNA analysis. The burden is on the Government, as the Court knows, and that was inappropriate. . . . He suggests to this jury that we had some obligation to bring this in here if we wanted to question anything about this case. . . .

*Id.*

The court denied Wimbley's motion for a mistrial, and the Sixth Circuit affirmed, explaining,

> The district court correctly found that the prosecutor's rebuttal argument was a legitimate response to Wimbley's closing argument and not an improper attempt to shift the burden of proof. . . . [T]he prosecutor's comments here were a proper response to defense counsel's statements that the government had not performed proper testing of the evidence.

*Id.* at 462.

Similarly, in *United States v. Newton, supra*, the defense asserted in closing arguments that the government had withheld an audiotape from the jury. The prosecutor responded by arguing that Newton could have played the audiotape for the jury if he deemed it crucial to the case. 389 F.3d at 635. On appeal the Sixth Circuit held that the prosecutor's argument was a fair response to the defense's assertions, which "opened the

14

door to [the] rebuttal." *Id*. at 638.

In *United States v. Clark*,  984 F.2d 965 (6th Cir. 1993), one of the government's witnesses was an ATF agent who testified about voluntary incriminating statements that the defendant made while being transported to federal court in Grand Rapids for arraignment on narcotics and firearms charges.  During closing arguments, the defendant's counsel told the jury that the government did not call a second ATF agent who was also in the car and who should have been able to support the testifying agent's testimony.  Defense counsel suggested that the reason the government did not call the other agent was because he would not have corroborated the testimony that Clark had made incriminating statements.  In rebuttal argument, the AUSA stated:

> We're left with the case the government presented.  You can't speculate on things.  But you can consider this:  Remember the defendant had the opportunity to call witnesses if he chose to.  If there is proof that [the agent] lied, he had the opportunity.  Not the responsibility.

982 F.2d at 967.

Clark's counsel objected, and the district court neither sustained nor overruled; instead, the court instructed the jury that the defendant had no obligation and was not expected to call the second ATF agent to testify.  *Id.*

The Court of Appeals found no error explaining:

> We think the prosecutor's argument did not amount to misconduct. The rebuttal statements were made in response to defense counsel's argument that implied that the government had not called the other agent to testify because Milhills [the testifying agent] lied on the stand, and the fellow agent would therefore not corroborate Milhills's "perjury."  The

15

government's rebuttal argument did not imply in any way that the burden of proof was on the defendant to prove his innocence.  It was, instead, fair comment designed to meet the defense counsel's argument that the government omitted to call the second agent because he would have testified in favor of Clark.  There was nothing unfair about the argument.  Moreover, in an abundance of caution, lest a juror misapprehend the relevance of the government's response, the court immediately instructed the jury that normally the defendant would not call a government witness and had no duty to do so.  The court also instructed the jury that the government had the burden of proof as to all the elements of its case against the defendant.  We conclude that the challenged argument was not unfair.

*Id.* at 969.  *See also United States v. Brown*, 66 F.3d 124 (6th Cir.), *cert. denied*, 516

U.S. 1132 (1996) (holding that prosecution's observation in rebuttal argument that the

defense counsel had not called a handwriting expert was an appropriate rebuttal to the

defense's reference in closing to the prosecution's failure to call such a witness).

    As in the above cases, in this case, the implication of defense counsel's statements

in closing argument about the Government's failure to present Defendant's phone's cell

information was that the evidence was intentionally not presented because it would have

been beneficial to the Defendant.  The Government's response, like the responses of the

prosecutors in *Wimbley, Newton, Clark* and *Brown*, thus, was "invited" and did no more

than respond substantially in order to "right the scale."  The Government did not shift the

burden of proof to the defense.

    Furthermore, immediately after the AUSA made the statements in the rebuttal

argument, the Court instructed the jury to disregard them and reminded the jurors of its

preliminary instruction that the Government has the burden of proof and that the

16

Defendant had no burden to prove anything and no obligation to present any evidence. The Court reiterated these instructions in its Final Jury Instructions given later that day. As indicated above, the Court must presume that the jury following the instructions.

For all of the foregoing reasons, the Court concludes that neither a judgment of acquittal nor a new trial on this ground is warranted.

## SUFFICIENCY OF THE EVIDENCE

Littles' final ground for acquittal/new trial is his claim that the jury's verdict in this matter was based on insufficient evidence.

The standard applicable in reviewing claims of insufficiency of the evidence is, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence "need not exclude every logical hypothesis other than guilt," and "every reasonable inference must be drawn in the government's favor." *United States v. Woods*, 877 F.2d 477, 479 (6th Cir. 1989); *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992), *cert. denied*, 113 S.Ct. 2969 (1993).

The testimony of a single accomplice is sufficient to uphold a conviction under federal law. *United States v. Spears*, 49 F.3d 1136, 1140 (6th Cir. 1995). Moreover, the testimony of the accomplice need not be corroborated. *United States v. Davis*, 809 F.2d 1194, 1203 (6th Cir. 1987).

It is further well-settled that in reviewing a conviction on a Rule 29 motion, the court must resolve all issues of credibility in favor of the jury's verdict. *See United States v. Malizewski*, 161 F.3d 992, 1006 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 1129 (1999); *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999), *cert. denied*, 119 S.Ct. 1793 (1999).

The Court finds here that there was clearly ample, competent evidence presented over the course of the eight-day trial from which a jury could find beyond a reasonable doubt that Defendant Littles was guilty of the carjackings and firearm violations charged in the superseding indictment.

As the Court observed in denying Defendant's Rule 29 motion for a judgment of acquittal after the Government rested, the testimony of two of the Government's witnesses alone -- Vercell Coney and Sherod Houston -- provided sufficient evidence to submit the case to the jury and to uphold the jury's verdict.

But beyond Coney's and Houston's testimony, numerous other witnesses -- including Defendant Littles' girlfriend, Tiara Jackson; Vercell Coney's girlfriend, Rachel Hyman; Sherod Houston's girlfriend, Jessica Antwine; the carjacking victims Dayon Harris and Martell Bostic; Michigan State Police Forensics experts Jennifer Jones and Jaime Fugitt; Detroit Police Evidence Technician David Andrews; FBI cellular analyst Christopher Hess; Kevin Hanley, the Spotlight Liquor Store robbery victim; car theft victims Ed Fanges and Daoud Bazzi, and eleven local and federal law enforcement

18

officers -- testified as to the events giving rise to the charges.  Additionally, several

security video tapes and voluminous cellular phone records were admitted at trial.

Defendant challenges the verdict based primarily on Kevin Hanley's lineup

identification of Sherod Houston -- not Defendant Littles -- as the person who robbed

him at gunpoint at the liquor store on March 19, 2014.  Defendant also points out that

Houston and he do not have similar physical builds.

However, Hanley's testimony undermined the reliability of his selection as

Houston as one of the robbers.  He testified that when he viewed the lineup he was not

confident in making a choice and that he really did not recognize anyone in the lineup.  "I

based my decision solely on the way he was carrying himself in the lineup."  9/17/15 Tr.

p. 95.  He explained that most of the people in the lineup seemed relaxed and were

joking around "except for one individual who seemed rather tense and I chose that

person."  *Id.*

Defendant also argues that the evidence was insufficient because the two

carjacking victims failed to pick Gino Littles out of a lineup.  However, both victims

testified that they were not looking at the faces of the carjackers at the time of the crime.

Defendant also argues that Vercell Coney's testimony was not credible.  In

support he points to Rachel Hyman's testimony that Vercell Coney told her on March 19

that he was out carjacking with Gino Littles *and* Sherod Houston, not with Gino Littles

alone, as Coney testified.  Defendant also points out that Coney lied to the FBI about an

19

unrelated crime and that Houston and Coney were housed in the same cell bock for over six weeks before they were interviewed by Agent Zambeck, giving them ample time to coordinate their stories.  As for Sherod Houston, Defendant merely argues that Houston "is not worthy of belief,"  However, as noted, in reviewing a conviction on a Rule 29 motion, the court must resolve all issues of credibility in favor of the jury's verdict. *Malizewski*, 161 F.3d at 1006; *Talley*, 164 F.3d at 996.

In sum, given the fact that the Court must view all possible inferences from *all* of the evidence in a light most favorable to the Government, the Court finds no basis for granting Defendant's Rule 29 Motion.

<u>A NEW TRIAL IS NOT WARRANTED</u>

Fed. R. Crim. P. 33 states that "[u]pon the defendant's motion, the court may grant a new trial if required in the interest of justice."   Unlike a Rule 29 motion, when considering a Rule 33 motion for a new trial based upon the weight of the evidence, district courts can "consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice." *United States v. Ashforth*, 836 F.2d 260, 266 (6th Cir. 1988);  United *States v. Turner*, 490 F.Supp. 583, 593 (E.D.Mich.1979), *aff'd*,  633 F.2d 219 (6th Cir.1980), *cert. denied*,  450 U.S. 912 (1981). However, such motions "are not favored" and should only be granted "in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *Id.*   The decision of whether to grant or deny a new trial motion is a matter

within the sound discretion of the trial court. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991); *United States v. Ashforth, supra.*

There is nothing in the record that shows that the jury's verdict was against manifest weight of the evidence. While the Court acknowledges that there were some inconsistencies in some of the witnesses' testimony, it does not find that the cumulative evidence "preponderates heavily" against the jury's verdict. The jury's determination that Houston and Coney were credible, in conjunction with the other evidence presented at trial, provides more than sufficient foundation for the jury's verdict against Defendant. Therefore, Defendant's Motion for New Trial will be denied.

<u>CONCLUSION</u>

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for a New Trial **[Dkt. # 79]** is DENIED.


s/Gerald E. Rosen
United States District Judge

Dated: May 18, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 18, 2016, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

21