UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-1, GINO LITTLES,

    Defendant.

Case No. 14-20484
Honorable Laurie J. Michelson
Magistrate Judge Mona K. Majzoub

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE [127]**

In October 2015, a jury convicted Gino Littles of two counts of carjacking, 18 U.S.C. § 2119(1), and related offenses. (ECF No. 115, PageID.2196–2197.) Littles' convictions were the result of his participation, with Vercell Coney and Sherod Houston, in a March 2014 crime spree. (ECF No. 106, PageID.750–760.) Chief Judge Gerald Rosen sentenced Littles to a term of 408 months' incarceration. The Sixth Circuit affirmed Littles' convictions. *See United States v. Littles*, 688 F. App'x 321, 322 (6th Cir. 2017).

Following Chief Judge Rosen's retirement, Littles' case was assigned to this Court. Now, Littles moves to vacate, set aside, or correct his sentence. As Littles' motion is without merit it will be DENIED.

**I.**

At trial, Littles maintained that he was not with Houston or Coney as they carried out the spree. (ECF No. 112, PageID.2080–2081.) But Houston and Coney each entered into Rule 11 plea agreements and testified against Littles. (ECF No. 28, 32.)

Coney's testimony highlighted the relevant facts. Coney told the jury he met Littles and Houston in state prison. (ECF No.108, PageID.982, 985.) All three were paroled around October 2013. (ECF No. 108, PageID.984–986.) Short on money a few months after their release, the three developed a plan to commit robberies. (ECF No. 108, PageID.988–998, 1011.) It first included Houston and Littles stealing a car. (ECF No. 108, PageID.1020). After that, Houston changed his mind and backed out of the robberies. (ECF No. 108, PageID.1020–1021.) Coney and Littles carried on without Houston. (*Id.*) The pair abandoned the Camaro and stole a white minivan. (ECF No. 108, PageID.1027.) Using the minivan, Coney and Littles drove to a liquor store and, there, robbed a man of $9.00. (ECF No. 108, PageID.1034–1036.) Then Coney and Littles drove to a nearby gas station where, at gunpoint, they carjacked a Chevy Impala and a Jeep. (ECF No. 108, PageID.1039–1045.) The pair abandoned the Impala but hid the Jeep in a motel parking lot. (ECF No. 108, PageID.1048, 1052.) The next morning, Coney and Littles enlisted Houston to retrieve the Jeep in the hopes of selling it. (ECF No. 108, PageID.1078, 1084–1085.) Coney and Littles trailed behind Houston in another car, but, en route from the motel parking lot, Michigan State Police arrested all three. (ECF No. 108, PageID.1096–1098.)

**A.**

Although his codefendants pleaded guilty, Littles went to trial. Littles' tried to convince the jury he was not one of the guys involved that night—Coney and Houston went on the crime spree. But the jury heard the above testimony from Coney, corroborating testimony from Houston, heard from other witnesses as well, and saw cellphone data linking Littles' phone to the crime scenes. In the end, the jury did not credit Littles' version.

**B.**

In his timely filed § 2255 motion, Littles raises four challenges to his sentence. Distilled down, Littles insists his incarceration is, in part, the result of ineffective assistance on the part of his attorneys. (ECF No. 129, PageID.2296.) Littles says there was no physical evidence linking him to the crime spree, and none of the victims picked him out of a lineup. So, but for the constitutionally significant errors made by his lawyers, Littles would not have been convicted, nor would his conviction have been affirmed. (*Id.* at PageID.2295–2297.) And, says Littles, *Dimaya* overturns his conviction for using a firearm during a crime of violence. (ECF No. 129, PageID.2349–2350.)

None of Littles' claims warrant a correction to his sentence. Nor is a hearing necessary because the motion, record of prior proceedings, and governing law "conclusively show that [Littles] is entitled to no relief." 28 U.S.C. § 2255(b); Rules Governing § 2255 Cases, Rule 4(b).

**II.**

Section 2255 permits a federal prisoner to challenge his sentence. 28 U.S.C. § 2255. To prevail, Littles must show that the sentence imposed is "in violation of the Constitution or laws of the United States," or "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Importantly, "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). So "[a] prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).

### III.

#### A.

Ineffective-assistance-of-counsel claims are an appropriate basis for relief under § 2255. *See United States v. Caver*, 470 F.3d 220, 250 (6th Cir. 2006). To establish ineffective assistance, Littles must demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Littles raises four ineffective-assistance claims. Littles points to three instances where he says his trial lawyer was ineffective: first in failing to move to suppress cell site location data collected without a warrant; second in failing to impeach government witnesses; and third for failing to object to a pattern of prosecutorial misconduct. (ECF No. 127, PageID.2279.) Then he says his appellate lawyer was ineffective for failing to present a sufficiency of the evidence claim to the Sixth Circuit. (ECF No. 127, PageID.2280.)

#### 1.

Littles thinks his lawyer should have filed a motion to suppress cell-site location data. Littles says the government obtained his cell-site data absent probable cause. (ECF No. 129, PageID.2300.) The government obtained Littles' cell-site data in April 2014, after Littles' arrest. And at the time, the Stored Communications Act allowed the government to access cell-site data provided they had "reasonable grounds" to believe the electronic information was "relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

It was not until 2018 that the Supreme Court changed the law. In *Carpenter v. United States*, the Court held that the government must first get a warrant, supported by probable cause, to access cell-site location data. *See* 138 S. Ct. 2206, 2221. So, in hindsight, Littles thinks his

lawyer should have had the foresight to challenge the constitutionality of the warrantless seizure of his cell-site data. (ECF No. 129, PageID.2302–2303.)

But hindsight "is not the lens through which [courts] grade attorney performance." *Logan v. United States*, -- F.3d --, No. 17-1996, 2018 U.S. App. 35075, at *16 (6th Cir. Dec. 13, 2018). True, a motion to suppress would not have been frivolous. But neither Littles' motion nor the record contain any evidence that Littles ever asked his lawyer to file a motion to suppress. And, most importantly, at the time the government obtained Littles' cell site location data, the Stored Communications Act permitted warrantless access to cell site data. Plus, controlling Supreme Court precedent held that individuals extinguished their reasonable expectation of privacy in information voluntarily disclosed to third parties, like cell-site data. *See Smith v. Maryland*, 422 U.S. 735 (1979); *see also United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016). Accordingly, both prior to, and after, Littles' trial, courts applied *Smith*—sometimes reluctantly—to uphold government collection of cell site data pursuant to the Stored Communications Act. *See United States v. Davis*, 785 F.3d 498, 511–13 (2015); *see also United States v. Graham*, 824 F.3d 421 (4th Cir. 2016); *United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016). And Littles cannot establish deficient performance just because his attorney did not challenge the constitutionality of the government's action four years before someone else succeeded. *See Premo v. Moore*, 562 U.S. 115, 125 (2011) (noting, in an analogous context, that "distortions and imbalance" may "inhere" when an attorney's decisions are subjected to scrutiny in hindsight).

Lastly, even if Littles could establish that his attorney was deficient in failing to move to suppress the data, Littles cannot establish prejudice. In this case, prejudice rises and falls with the success or failure of the suppression motion. *See Carter v. Parris*, 910 F.3d 835, 839 (6th Cir. 2018). Even if Littles' attorney could have convinced Chief Judge Rosen that the warrantless

collection of cell site data violated the Fourth Amendment, the good faith exception very likely would have applied. *See United States v. Pembrook*, 876 F.3d 812, 823 (6th Cir. 2017); *United States v. Scott*, No. 14-20780, 2018 WL 2159916, *7 (E.D. Mich. May 10, 2018) ("As *Pembrook* makes clear, even if law enforcement officers violated the Fourth Amendment by obtaining the Metro PCS records without a warrant, the records were nonetheless not subject to suppression."); *United States v. Pembrook*, 119 F.Supp. 3d 577, 595–96 (E.D. Mich. July 31, 2015). Applying the good faith exception would mean the cell-site location data would have been admitted anyway. So his motion to suppress likely would have been denied, meaning Littles' cannot establish prejudice. *Carter*, 910 F.3d at 839. Thus, Littles is not entitled to relief on this ineffective-assistance claim.

**2.**

Littles also says his trial counsel should have done a better job cross examining four of the government's witnesses—Kevin Hanley, Jessica Antwine, Houston, and Marcel Bostic. Bostic was a carjacking victim, Hanley a robbery victim, and Antwine was Houston's girlfriend at the time of the spree. Recall that Littles' strategy at trial was to pin everything on Houston and Coney. (*See, e.g.*, ECF No. 129, PageID.2314–2320.) Littles says the government called Bostic, Antwine, and Hanley, in part, to undercut his theory. So Littles insists his attorney should have done a much better job of cross examining these witnesses. Had his lawyer done a better job, the jury would have believed Littles' version of events and could not possibly have convicted him. The Court sees no deficient performance.

Take Hanley's testimony. Hanley told the jury about the armed robbery. He said two men came up from behind him after he exited a liquor store. At least one of them had a gun, maybe both. About a day after the robbery, he viewed a live lineup. (ECF No. 107, PageID.876.) He

picked someone out of that lineup, but he was not at all confident about his choice. (ECF No. 107, PageID.884.)

On cross, Littles' attorney established that Hanley actually picked Houston as the man that robbed him. (ECF No. 107, PageID.894.) And when Coney testified, he told the jury Houston had nothing to do with the robbery. So Hanley's identification of Houston undercut Coney's inculpatory testimony (ECF No. 108, PageID.1021), and fit right in with Littles' version of events. Then, also on cross, Hanley admitted he could not identify Littles as one of the robbers—even sitting in the courtroom. (ECF No. 107, PageID.898.) All told, Littles' attorney's cross examination tied Houston to the robbery, poked holes in Coney's testimony that Houston had nothing to do with the robbery, and distanced Littles from the robbery. So Littles cannot show that his attorney's cross examination amounted to deficient performance.

The same is true for the cross examinations of Houston and Jessica Antwine, Houston's girlfriend at the time of the robberies. (ECF No. 129, PageID.2318.) Littles says the government called her to alibi Houston on the night of the crime spree. (ECF No. 129, PageID.2319.) And a portion of Houston's direct examination was intended to bolster Antwine's testimony. (ECF No. 129, PageID.2325.) But, says Littles, Antwine and Houston offered conflicting accounts of the evening, even when the government worked to lead them to a preferred response. (*Id.*) As a result, Littles says his lawyer should have more effectively attacked Houston's and Antwine's credibility. (ECF No. 129, PageID.2328.)

The main thrust of Antwine's cross was to undercut Antwine's alibi for Houston, as well as her credibility overall. Littles' attorney grilled Antwine over her inconsistent testimony, especially where she waffled over Houston's whereabouts on the night in question. (ECF No. 110, PageID.1751–1757.) Then Littles' attorney did the same with Houston, getting him to admit he

was not an honest person (ECF No. 110, PageID.1592), hated prison (*id.* at PageID.1594), made a deal so he could receive less time in prison (*id.* at PageID.1598–1699), and repeatedly lied to police to minimize his involvement in the crime spree (*id.* at PageID.1616–1622). So Littles cannot establish that his trial lawyer performed deficiently when crossing Houston and Antwine.

That leaves Marcel Bostic's testimony. Bostic told the jury he was carjacked, and, about 36 hours later he, too, viewed a live lineup. Littles was in the lineup, but Bostic picked someone else. Even so, Bostic testified at Littles trial. And during his testimony, the government showed him photographs of the individuals in the live lineup. (ECF No. 109, PageID.1228.) Having seen the photographs, then he told the jury that, at the time of the lineup, he thought Littles most closely resembled the carjacker. (ECF No. 109, PageID.1228–1229.) But Bostic remembered Littles, at the time, looked too much like a "church boy." (ECF No. 109, PageID.1229.) So, instead, Bostic picked someone who looked more "rugged." (*Id.*) Then the government asked Bostic the following question:

> So if I asked you to -- if I ask you today to pick out somebody in this lineup that most physically resembles the person during the robbery and to put aside the fact that -- to ask you -- I guess the better way to ask it is only match the physical quality of the person from the robbery with the people here, who would you pick?

(ECF No. 109, PageID.1230.) Bostic told the jury he would have picked Littles. (ECF No. 109, PageID.1231.)

Littles tries to challenge Bostic's in-court identification by way of an ineffective-assistance claim. Littles says the government violated the Due Process Clause's prohibition against unduly suggestive identifications when it led Bostic to identify Littles in court. (ECF No. 129, PageID.2307–2308.) And Littles thinks his lawyer made a mistake of constitutional magnitude when he failed to object to the identification and the line of questioning leading up to it.

8

To be sure, the government's questioning raises concerns. Bostic viewed a live lineup a matter of hours after the robbery. With the carjacking front of mind, Bostic could not pick Littles as the carjacker. Years later, when Bostic took the stand during Littles' carjacking trial, the government led Bostic through a line of questioning that culminated in Bostic eventually picking Littles as the carjacker. So with Littles in court, charged with carjacking, Bostic's in-court identification at least raises the specter of a "substantial likelihood of misidentification." *Neil v. Biggers*, 409 U.S. 188, 198 (1972); *United States v. Rice*, 66 F. App'x 591, 595–96 (6th Cir. 2003).

But Littles' challenge is to his lawyers' response to the questioning. And while he says his lawyer should have objected to the in-court identification, Littles cannot overcome the "strong presumption" that his lawyer's decision not to was strategic. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Letting the jury hear Bostic pick two different people as his carjacker created an opportunity for Littles' lawyer to cast doubt on both identifications. On cross, Littles' attorney did just that. His cross established that Bostic took the live lineup seriously and he tried to identify the man that carjacked him. (ECF No. 109, PageID.1233–1234.) Bostic did not identify Littles. (ECF No. 109, PageID.1232.) But Bostic nonetheless said he believed he was picking the man that most resembled the carjacker. (*Id.*) And only years later, with Littles standing before him, on trial for carjacking, could Bostic identify Littles as the carjacker. (*Id.* at PageID.1231–1232.) So Littles' attorney did not let Bostic's in-court identification go unchallenged. Instead, Littles' attorney delivered a strong cross examination that strategically cast doubt on the reliability of both identifications. Littles cannot show deficient performance.

And even if Littles could show deficient performance, it is not at all clear he can establish a reasonable probability of a different outcome. *Strickland*, 466 U.S. at 689. True, the sole issue at trial was whether Littles participated in the crime spree. And Bostic's identification placed Littles

9

at the scene of a double carjacking. But even if the jury had not heard Bostic's in-court identification, they still heard Vercell Coney's testimony. Coney told the jury all about carjacking Bostic at the gas station. And in Coney's version of events, Littles was there. Coney told the jury where the men hid, who they picked to carjack, how the crime went down, and where the two escaped afterward. And Coney's testimony was corroborated by Houston's testimony, and Littles' cell-site location data. So, even assuming Littles' attorney should have objected to Bostic's identification, the rest of the evidence admitted casts appreciable doubt on any claim of prejudice flowing from any error.

3.

Finally, Littles says his trial counsel was ineffective for failing to object to repeated prosecutorial misconduct. (ECF No. 129, PageID.2333.) Littles thinks the prosecutor made a behind-the-scenes attempt to get witnesses to change their stories to inculpate him. (ECF No. 129, PageID.2336.) As evidence of the plot, he points to all the leading questions the government asked. (ECF No. 129, PageID.2336–2337.)

But Littles' claim has two problems. Littles is at least right that the government asked a "tremendous" amount of leading questions. (ECF No. 110, PageID.1650.) But his lawyer objected to the questioning, pointing out that the questions amounted to bolstering. (*Id.*) Chief Judge Rosen sustained the objection and admonished the government. (*Id.*) So Littles cannot show deficient performance. And, at bottom, Littles' prosecutorial-misconduct claim protests the fact that the jury credited testimony painting him as a driving force behind the crime spree. Witness credibility is solely for the jury to decide. *See, e.g.*, *United States v. Bond*, 22 F.3d 662, 667 (6th Cir. 1994). That Littles thinks the jury should have discounted testimony from Houston, Coney, Bostic,

Hanley, and Antwine is not a basis for an ineffective-assistance claim. So Littles is not entitled to relief.

**4.**

Littles also says his appellate counsel was ineffective for failing to raise a sufficiency of the evidence claim on direct appeal. However, "a defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015); *see also United States v. Mack*, 808 F.3d 1074, 1080 (6th Cir. 2015). The uncorroborated testimony of a single accomplice is enough to support a conviction. *See United States v. Bowen*, 194 F. App'x 393, 401–02 (6th Cir. 2006); *United States v. Spears*, 49 F.3d 1136, 1140 (6th Cir. 1995) abrogated on other grounds *United States v. Wells*, 519 U.S. 482 (1997); *United States v. Davis*, 809 F.2d 1194, 1203 (6th Cir. 1987). And it is not deficient performance for appellate lawyers to omit meritless claims. Rather, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quotation marks omitted); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). In Littles' case, his appellate attorney strategically winnowed. Even though Littles points to an absence of physical evidence linking him to the crime spree, he ignores the testimony from his accomplices, and cellphone data putting him at the scene of each crime—the same reasons Chief Judge Rosen denied Littles' sufficiency argument after trial. (ECF No. 101.) As a result, Littles has established neither deficient performance nor prejudice in appellate counsel's decision to forego a sufficiency claim in place of stronger arguments.

**B.**

Finally, Littles says the Supreme Court's recent decision in *Sessions v. Dimaya*, 138 S. Ct. 1204, 1216 (2018), casts doubt on his convictions for using a firearm during a crime of violence, 18 U.S.C. § 924(c). (ECF No. 127, PageID.2282.) *Dimaya* relied on an earlier Supreme Court case to hold that the residual clause contained in 18 U.S.C. § 16(b) was unconstitutionally vague. *Dimaya*, 138 S. Ct. at 1216. Because § 924(c)'s residual clause is identical to the residual clause in § 16(b), Littles says *Dimaya* throws out his § 924(c) convictions.

However, controlling Sixth Circuit precedent still distinguishes § 924(c) from § 16(b). *Shuti v. Lynch*, 828 F.3d 440, 449 (6th Cir. 2016) (reasoning that § 924(c) deals with "real-world" facts of criminal offenses rather than the older, predicate offenses that are the focus of § 16(b)). And the Eleventh Circuit has held that § 924(c) does not suffer from the same flaws as those relied upon in *Dimaya* to invalidate the residual clause in § 16(b). *See Ovalles v. United States*, 905 F.3d 1231 (11th Cir. 2018) (en banc). So it is not obvious that *Dimaya* disturbs § 924(c). And even if it did, *Dimaya* has not been made "retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).

Even more, Littles' § 924(c) convictions are a result of his use of a gun during two carjackings. And carjacking proscribes the taking of a vehicle "by force and violence." 18 U.S.C. § 2119. Based on the "by force and violence" language, many circuits say carjacking falls within §924(c)'s force clause. *United States v. Kundo*, 743 F. App'x 201, 203 (10th Cir. 2018); *United States v. Gutierrez*, 876 F.3d 1254, 1257 (9th Cir. 2017); *United States v. Jones*, 854 F.3d 737, 740–41 (5th Cir. 2017); *United States v. Evans*, 848 F.3d 242, 247 (4th Cir. 2017); *In re Smith*, 829 F.3d 1276, 1280–81 (11th Cir. 2016). And the Sixth Circuit has come very close to joining the chorus. *See In re Loverson*, No. 18-5612, 2018 U.S. App. LEXIS 28783, at *4–5 (6th Cir. Oct.

12

11, 2018). Indeed, the Sixth Circuit has held that Hobbs Act robbery, which, similar to carjacking, requires proof that the defendant used "actual or threatened force, or violence, or fear of injury, immediate or future," falls within § 924(c)'s force clause. *United States v. Camp*, 903 F.3d 594, 597 (6th Cir. 2018) (quoting *United States v. Gooch*, 850 F.3d 285, 291–92 (6th Cir. 2017). So, even if *Dimaya* upsets § 924(c)'s residual clause, Littles' carjacking conviction likely falls within § 924(c)'s force clause, and he is not entitled to relief on his *Dimaya* claim.

**IV.**

In sum, Littles cannot show that he was denied his Sixth Amendment right to the effective assistance of counsel. Nor can Littles establish that his convictions under § 924(c) are no longer valid. As a result, Littles' motion to vacate, set aside, or correct his sentence is DENIED. And the Court further finds that reasonable jurists could not debate whether "the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Littles has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). So the Court DENIES Littles a certificate of appealability.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: March 5, 2019

CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, March 5, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.

                                    s/William Barkholz
                                    Case Manager